Filed 10/28/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MIDWEST MOTOR SUPPLY CO.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>PATRICK FINCH,<br><br>    Real Party in Interest. | A160096<br><br>(Contra Costa County<br>Super. Ct. No. MSC1902038) |

Petitioner Midwest Motor Supply Co. (Midwest) seeks writ relief from a trial court order denying its motion to dismiss or stay a lawsuit filed by its former employee, Patrick Finch, on the basis of forum non conveniens. At issue is whether Finch may void a forum-selection clause in his employment agreement under Labor Code section 925, which renders such a clause in an employment contract voidable by an employee if the contract containing the clause was "entered into, modified, or extended on or after January 1, 2017." (Lab. Code, § 925, subd. (f).)[1] The trial court determined Finch could void the forum-selection clause under section 925 because Midwest modified the compensation provision of Finch's employment agreement in 2017 and again in 2018. Midwest claims this was error, arguing that section 925 applies only

---

[1] All further undesignated references are to the Labor Code.

1

when a forum-selection clause itself is modified on or after January 1, 2017. We disagree and shall deny Midwest's writ petition.

## BACKGROUND

Finch began his employment with Midwest in October 2014 as a Sales Manager in Training. The terms of Finch's employment were memorialized in an employment agreement. The employment agreement contained a forum-selection clause, which stated: "This Agreement shall be construed in accordance with Ohio Law. The Employee agrees that: (1) Any action brought by the Employee or on the Employee's behalf, concerning, relating to or involving this Agreement, or any other Agreements entered into pursuant to this Agreement, must be venued in Franklin County, Ohio; and (2) Any action brought by the Company, or on its behalf, concerning, relating to or involving this Agreement, or any other Agreements entered into pursuant to this Agreement, must be venued in Franklin County, Ohio. The parties hereby consent to the jurisdiction of the state or courts in said county."

In May 2016, Midwest promoted Finch to Sales Supervisor. The exhibits to the 2014 employment agreement were revised to reflect Finch's promotion. Finch's compensation as Sales Supervisor was controlled by revised Exhibit C. Exhibit C stated that "[t]his description of the Employee's compensation supersedes any and all previous descriptions of such compensation which predates this Exhibit C." As to the details of Finch's compensation, Exhibit C stated: "Please reference the yearly Compensation and Annual Plan Letter." At the time of his promotion, Finch's compensation for 2016 was described in a Compensation and Annual Plan Letter dated January 18, 2016, which set Finch's sales goals and the bonuses he would receive for meeting those goals, along with other bonuses for the year.

2

On March 10, 2017, Midwest provided Finch with a Compensation and Annual Plan letter for 2017, which revised Finch's compensation, including his sales goals and bonuses for meeting those goals. On March 14, 2018, Midwest provided Finch with a Compensation and Annual Plan letter for 2018, which once again revised Finch's compensation, including his sales goals and bonuses.

In September 2019, Finch filed this lawsuit in Contra Costa County against Midwest, alleging violations of the Labor Code for Midwest's failure to pay his final wages on time and failure to reimburse him for business expenses. Finch also alleged a violation of Business and Professions Code section 17200 and a cause of action under the Private Attorneys General Act.

Midwest filed a motion to dismiss or, alternatively, stay this action on the basis of forum non conveniens. Midwest asserted that Finch was required to litigate his lawsuit in Franklin County, Ohio, pursuant to the forum-selection clause in his 2014 employment agreement. Finch opposed the motion, arguing that the forum-selection clause was unenforceable under section 925.

The trial court denied Midwest's motion. The court concluded that the 2017 and 2018 Compensation and Annual Plan letters modified the 2014 employment agreement that contained the forum-selection clause. Because these modifications occurred after January 1, 2017, the court concluded they triggered Finch's right under section 925 to void the forum-selection clause.

Midwest challenged the trial court's ruling by filing a petition for writ of mandate with us. We issued an order to show cause. The matter is now before us for decision.

3

## DISCUSSION

Section 925 provides: "An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . :[¶] (1) Require the employee to adjudicate outside of California a claim arising in California." (§ 925, subd. (a).) "Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute." (§ 925, subd. (b).) Section 925 became effective January 1, 2017, and applies "to a contract entered into, modified, or extended on or after January 1, 2017." (§ 925, subd. (f).)[2]

Midwest and Finch disagree about whether section 925 permitted Finch to void the forum-selection clause in the 2014 employment agreement. Their dispute centers on the meaning of the phrase "to a contract . . . modified" in subdivision (f). Midwest argues that this phrase should be interpreted to mean that a forum-selection clause itself must be modified or added to a contract on or after January 1, 2017 in order for an employee to void the clause. Midwest asserts that although it changed Finch's compensation after January 1, 2017, the parties neither modified the forum-selection clause in the 2014 employment agreement nor added a new forum-selection clause, which precludes Finch from voiding the clause under section 925. Finch, embracing the trial court's reasoning, argues that subdivision (f) is not limited to modifications to a forum-selection clause, but

_____

[2] Section 925 does "not apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated or the choice of law to be applied." (§ 925, subd. (e).) Midwest has not argued this provision applies to Finch.

4

rather applies to any modification to a contract containing a forum-selection clause that occurs on or after January 1, 2017. Because his employment agreement was modified after January 1, 2017 to change his compensation, Finch argues section 925 allowed him to void the forum-selection clause, even though no changes were made to the forum-selection clause itself.

We appear to be the first appellate court in this state to address whether section 925 applies to any modification to a contract or is limited to the modification of a forum-selection clause specifically. To resolve this issue, we apply well-known principles of statutory interpretation. " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617.)

Applying these principles, we agree with Finch's interpretation and conclude that under section 925, a forum-selection clause is voidable by an employee if it is contained in a contract that is modified on or after January

5

1, 2017, irrespective of whether the modification was to the forum-selection clause or another provision.

Our conclusion is based on the "plain and commonsense" meaning of the statutory language. First, subdivisions (a) and (b) of section 925 identify which provisions of a contract are prohibited by law and voidable by an employee. Among the voidable provisions is a forum-selection clause that "[r]equire[s] the employee to adjudicate outside of California a claim arising in California." (§ 925, subd. (a)(1).) Subdivision (f) then states when a prohibited provision is voidable by an employee—specifically, when a "contract" is "entered into, modified, or extended on or after January 1, 2017." (§ 925, subd. (f).) Contrary to Midwest's contention, subdivision (f) does not limit section 925's applicability to the modification of a forum-selection clause. Instead, section 925 applies, without limitation, to the modification of a "contract," which is well understood to mean every promise agreed to as part of a transaction. (See Rest. 2d Contracts, § 1 ["A contract is a promise *or a set of promises* for the breach of which the law gives a remedy . . . ."], italics added.) Read together, the provisions of section 925 state unambiguously that a forum-selection clause in a contract is voidable by an employee when any provision of the contract is modified on or after January 1, 2017.

If, as Midwest urges, we were to read into section 925 a limitation that restricts the statute's applicability to the modification or addition of a forum-selection clause, we would "violate the cardinal rule that courts may not add provisions to a statute." (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827.) Such a limitation simply does not exist in the statute's text. In addition, Midwest's construction of section 925 whittles section 925 to an inappropriately narrow scope that would prevent it from fulfilling its purpose. It is evident from the text of section 925 that the statute's intent is

6

to provide a California-based employee with a California forum to litigate employment-related claims if the terms of his or her employment change on or after January 1, 2017. (Accord *Ryze Claim Solutions LLC v. Superior Court* (2019) 33 Cal.App.5th 1066, 1072 (*Ryze*) ["Labor Code section 925 establishes a policy prohibiting employers from requiring California employees from agreeing to litigate in a different forum as a prerequisite to employment, but by its plain language states that its policy applies to agreements 'entered into, modified, or extended on or after January 1, 2017.' "].) Midwest's construction of the statute would allow employers to make changes to almost any provision in an employment agreement—including changes to material terms such as compensation—yet continue to require employees to litigate any claim relating to those changes in an out-of-state forum. An employer could effectively create an entirely new employment agreement but retain the same non-voidable forum-selection clause.

Midwest makes a number of arguments attempting to show that section 925 is ambiguous with regard to its scope. We are unpersuaded. Midwest fails to demonstrate any ambiguity, and if anything, its arguments support our interpretation that a modification to a contract on or after January 1, 2017 triggers an employee's right to void a forum-selection clause. Midwest first argues that our interpretation creates a redundancy in subdivision (f) because the terms "modified" and "extended" would be construed to have the same meaning. Midwest explains: "If literally any modification sufficed to trigger retroactive application of Section 925, the notion of an 'extension' would be meaningless because by definition an extension of the contract term would be a modification. Such a construction is to be avoided." We must, of course, avoid any construction that would

7

create a surplusage in the statute (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 547), and can easily do so here. A modification is understood to refer to a "change in the obligations of a party by a subsequent mutual agreement of the parties." (*West v. JPMorgan Chase Bank* (2013) 214 Cal.App.4th 780, 798; see also 1 Witkin, Summary of Cal. Law (11th ed. 2020) Contracts, § 995, p. 1040 ["Modification is a change in the obligation by a modifying agreement, which requires mutual assent, and must ordinarily be supported by consideration."].) An extension, by contrast, refers to "[t]he continuation of the same contract for a specified period." (Black's Law Dict. (11th ed. 2019) p. 728.) By using both terms in section 925, the legislature created a distinction between a change to the substance of the parties' obligations (a modification), and a change to the duration of the parties' obligations (an extension). There is no redundancy in the meaning of the two terms.

Next, Midwest relies on the contract law principle that a modification to a provision of a contract does not affect provisions that are not modified. (See *Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 25 ["A modification or alteration, unlike a novation, does not terminate the pre-existing contract"].) Based on this principle, Midwest posits that "there is no reason to conclude that, on its face, [s]ection 925 would render voidable the forum selection clause in an employment agreement entered into before January 1, 2017, if and when the employee is given a raise on or after January 1, 2017." Our view is the opposite. The fact that a modification to one provision in a contract does not affect other provisions is the *very reason* the legislature was compelled to include subdivision (f) in section 925. Prior to the enactment of section 925, a modification to one aspect of an employment agreement would not impact the other provisions of the

8

agreement, including a forum-selection clause.  Thus, in order to provide a California-based employee with a California forum to litigate employment-related claims, it was necessary for the legislature to include subdivision (f) when enacting section 925, so that any subsequent modification to an employment agreement would allow the employee to void a forum-selection clause requiring him or her to pursue a legal claim in another state.  Section 925 thus created a statutory exception to the general principle of contract modification whereby a modification to one provision in a contract effectively modifies a forum-selection clause in the same contract by allowing an employee to void the clause.

Midwest also claims that a "diversity of outcomes" in the decisions of federal district courts that have addressed section 925 reveals that the statute lacks a plain meaning.  Contrary to Midwest's assertion, there is no conflict in the federal cases addressing section 925.  At least three federal courts have concluded, as we do, that a modification to an employment agreement on or after January 1, 2017 triggered section 925, even though the modification was to a provision other than a forum-selection clause.  (See *Friedman v. Global Payments Inc.* (C.D. Cal., Feb. 5, 2019, No. CV 18-3038 FMO (FFMx)), 2019 U.S. Dist. Lexis 67414, at *3 [forum-selection clause voidable under section 925 when amendment to "Sales Policy Manual" occurring after January 1, 2017 changed plaintiffs' compensation]; *Yeomans v. World Fin. Grp. Ins. Agency, Inc.* (N.D. Cal., Nov. 6, 2019, No. 19-cv-00792-EMC ) 2019 U.S. Dist. Lexis 193100, at *23–*24 ["Having found that Plaintiffs plausibly allege they are properly classified as employees, that the Agreements imposed 'conditions of employment,' and that modifications to the Agreements were made after the effective date of § 925, the Court finds that Plaintiffs may void the forum-selection clauses at issue."]; *Karl v.*

*Zimmer Biomet Holdings, Inc.* (N.D.Cal., Nov. 6, 2018, No. C 18-04176 WHA) 2018 U.S. Dist. Lexis 189997, at \*10 [because defendants revised plaintiff's compensation on June 1, 2018, "[t]he modification condition required by Section 925 is met"].)

Other federal courts have, unsurprisingly, concluded that section 925 is inapplicable when no modification to an employment contract occurred on or after January 1, 2017. (*Rafeh v. Gold Star Mtg. Fin. Grp., Corp.* (C.D. Cal., July 12, 2019, No. 2:19-cv-00157-ODW (SKx)) 2019 U.S. Dist. Lexis 116615, at \*12 [because the employment agreements "[did] not address the issue of pay," plaintiffs' pay raises after January 1, 2017 did not trigger application of section 925; "[t]here is no evidence that the Employment Agreement containing the forum-selection clause was entered into, modified, or extended after January 1, 2017."]; *Yates v. Norsk Titanium US, Inc.* (C.D. Cal., Sept. 20, 2017, No. SACV 17-01089 AG (SKx)) 2017 U.S. Dist. Lexis 222165, at \*7–\*8 [section 925 inapplicable because employment agreement was not modified on or after January 1, 2017; any "implied-in-fact" modification was invalid because contract required modifications in signed writing]; *Edwards v. C4 Planning Sols., LLC* (S.D. Cal., April 18, 2019, No. 3:18-cv-02144-BEN-AGS) 2019 U.S. Dist. Lexis 66607, at \*10 [section 925 inapplicable to forum-selection clause agreed to in 2013; no evidence that the contract containing clause was modified on or after January 1, 2017].) These federal cases are similar to *Ryze, supra,* 33 Cal.App.5th 1066, in which Division Three of this court held it was error for the trial court to deny a motion to dismiss or stay in favor of an Indiana forum based on section 925, since the contract containing the forum-selection clause was not changed on or after January 1, 2017: "The trial court's decision to apply the policy expressed in Labor Code section 925 to the Employment Agreement between [the employer and

10

employee], which was not entered into, modified, or extended on or after January 1, 2017, effectively circumvented the Legislature's express intent that the statute not be applied to an earlier agreement or extension." (*Id.* at p. 1072.)

The final federal case cited by Midwest, *Lyon v. Neustar, Inc.* (E.D. Cal., May 3, 2019, No. 2:19-cv-00371-KJM-KJN) 2019 U.S. Dist. Lexis 75307 (*Lyon*), presents the factual scenario that Midwest claims is required to trigger section 925—a modification to a forum-selection clause contained in a pre-2017 contract. (*Id.* at *2.) The parties executed the original employment agreement before 2017; after 2017, they entered into a separation agreement that contained a forum-selection clause modifying the one set forth in the original agreement. (*Id.* at *2–*6.) In a preliminary injunction proceeding, the district court held that the employee showed a likelihood of success on the merits that the forum-selection clause was voidable under section 925. (*Id.* at *13.) Contrary to Midwest's reading of *Lyon,* however, it is apparent from the court's analysis that what triggered the application of section 925 was not the change to the forum-selection clause itself, but rather the consequent modification of the original employment agreement. After explaining that the "relevant *contract* is the original employment agreement as modified," the court concluded: "Because the forum-selection provision of the separation agreement directly modified the forum-selection provision of the employment agreement, and the modification occurred after January 1, 2017, *the original employment agreement as modified is covered by section 925*." (*Id.* at *19, *20, italics added.)

In sum, there is no tension or interpretive dissonance in the cases cited by Midwest. Instead, they make clear that a modification to a contract

occurring on or after January 1, 2017, triggers section 925, while a modification occurring prior to that date does not.

Midwest also argues there are "constitutional considerations" that weigh in favor of construing section 925 narrowly so that an employee may void a forum-selection clause only if the clause itself is modified on or after January 1, 2017. First, Midwest claims an interpretation that makes a forum-selection clause voidable following the modification of any contractual provision results in a retroactive application of section 925 prohibited by the Contracts Clauses of the state and federal constitutions. The Contracts Clauses of both constitutions prohibit the state from passing a law that impairs the obligations of contracts. (See U.S. Const., Art. I, § 10 [prohibiting a law "impairing the obligation of contracts"]; Cal. Const., Art. I, § 9 [same].) But "not all laws affecting pre-existing contracts violate the Clause." (*Sveen v. Melin* (2018) __ U.S. __ 138 S.Ct. 1815, 1821.) "In evaluating legislation that impairs private contractual rights, the United States Supreme Court applies what it characterizes as a 'two-step test.' [Citation.] As a threshold question, the court must determine ' "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. [Citations.] The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected." ' " (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1075.) "If the state law is found to create a 'substantial' impairment, 'the inquiry turns to the means and ends of the legislation.' [Citation.] To justify the legislation, the state 'must have a significant and legitimate public purpose behind the regulation, [citation], such as the remedying of a broad and general social or economic problem.' " (*Ibid.*)

The flaw with Midwest's argument is that section 925 does not operate retroactively because the law does not "change[] the legal effect of past events." (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 7.) When section 925 became effective on January 1, 2017, the statute did not have an automatic impact on forum-selection clauses in previously-executed employment agreements. Instead, the parties' act of modifying an employment agreement on or after January 1, 2017 is what allows an employee such as Finch to invoke section 925 and void a forum-selection clause.

Moreover, even if Midwest were correct that the statute retroactively affects pre-existing contracts, any impairment to employment agreements brought on by the forum-selection provision of section 925 would not be substantial, because that provision does not affect the substantive obligations of the contract, but only the procedure by which the parties may seek redress for a violation of those obligations. (Accord *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1270 [statute that revived time-barred insurance claims by one year was not unconstitutional impairment "because it merely affects the remedy for the violation of the contract, not the obligations contained within it"].) Further, even if we were to reach the issue and agree with Midwest that the statute effects a substantial impairment, any such impairment would seem to be well-supported by a significant and legitimate public purpose—allowing California residents who work in California to vindicate their rights in the courts of their home state. The author of section 925 described the need for the law in unmistakable terms: "[A]n increasing number of businesses and employers are imposing choice of venue and choice of law contractual provisions on Californians in order to evade California law. These contractual provisions allow businesses and employers to pick laws or venues of other states (and even other countries) to

13

govern a legal dispute in the event that one arises.  Accordingly, Californians who are forced to agree to these contractual terms must travel to another state or country to litigate or arbitrate a legal claim.  Given the expense and burdens of going to another forum, this ultimately means that a consumer or an employee is unlikely to vindicate his or her legal rights." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 1241 (2016–2017 Reg. Sess.) as amended August 19, 2016, pp. 1–2; see also *Lyon, supra,* 2019 U.S. Dist. Lexis 75307 at *26 [noting California's "strong public interest in protecting its employees"].)

Finally, Midwest argues that our interpretation of section 925 turns another statute using similar language—section 432.6—into an unconstitutional ex post facto law.  Effective January 1, 2020, section 432.6 prohibits California employers from requiring prospective and current employees to "waive any right, forum, or procedure" for a violation of the California Fair Employment and Housing Act or the Labor Code.  (§ 432.6, subd. (a).)  Any person violating section 432.6 is guilty of a misdemeanor. (§ 433.)  Similar to section 925, section 432.6 "applies to contracts for employment entered into, modified, or extended on or after January 1, 2020." (§ 432.6, subd. (h).)

We decline to address whether section 432.6 is an ex post facto law, as Midwest has not claimed it is subject to liability under section 432.6.  It is not the function of the appellate court to " ' "declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 227.)  We are particularly reluctant to address a hypothetical application of section 432.6 given that, earlier this year, a federal district court issued a preliminary injunction enjoining the state from enforcing section 432.6 after determining the statute was preempted by the Federal Arbitration Act.  (See *Chamber of Commerce of*

14

*United States v. Becerra* (E.D. Cal. 2020) 438 F.Supp.3d 1078, 1108.) We do, however, briefly observe that in no sense can section 925 be considered an ex post facto law because the statute does not penalize conduct that occurred prior to its enactment. Instead, as noted above, it prohibits the inclusion of forum-selection clauses in contracts entered into, modified, or extended *after* the statute's effective date. (See *Lynce v. Mathis* (1997) 519 U.S. 433, 441 [to be considered an ex post facto law, "a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it' . . . by altering the definition of criminal conduct or increasing the punishment for the crime."])

Having determined that section 925 is triggered by any modification to a contract occurring on or after January 1, 2017, it is a simple matter to conclude that, on the facts presented here, the forum-selection clause in Finch's 2014 employment agreement was voidable under section 925.[3] Finch's compensation was governed by Exhibit C to the employment agreement. Exhibit C, in turn, cross-referenced Finch's Compensation and Annual Plan Letter, making the letter part of the employment agreement. (See *Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 790 [parties may incorporate by reference into their contract the terms of some other document].) The Compensation and Annual Plan Letter was revised in March of 2017 to change Finch's compensation, then revised again in March 2018. Because the Compensation and Annual Plan Letter was incorporated into the employment agreement, the changes to the letter

---

[3] Midwest states there is a split in authority regarding which party has the burden of showing the existence and validity of a forum-selection clause. (See *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 149–153.) Regardless of which party bears the burden, however, we reach the same conclusion that Finch may void the forum-selection clause.

necessarily modified the employment agreement. And, because these modifications occurred on or after January 1, 2017, they triggered Finch's right under section 925 to void the forum-selection clause in the employment agreement. The trial court correctly denied Midwest's motion to dismiss or stay.

## DISPOSITION

The petition for writ of mandate is denied. Finch, the real party in interest, is entitled to his costs in this writ proceeding. (Rules of Court, rule 8.493(a)(1)(A).)

_____
BROWN, J.

WE CONCUR:

_____
POLLAK, P. J.

_____
TUCHER, J.

*Midwest Motor Supply Co. v. Contra Costa County Superior Court* (A166096)

Trial Court:         Contra Costa County Superior Court

Trial Judge:        Hon. Edward G. Weil

Counsel:

Hatmaker Law Group, Susan King Hatmaker, Robert William Branch, for Petitioner.

No appearance for Respondent.

Lebe Law, Jonathan Michael Lebe; Bisnar Chase, Jerusalem Belgian, Ian Silvers, for Real Party in Interest.